## Case No. 9,273.

### MATERN v. GIBBS et al.

[1 Spr. 158; [1] 17 Hunt, Mer. Mag. 287.]

District Court, D. Massachusetts. Dec., 1847.

SEAMEN—WHALING VOYAGE—LAY OF SEAMAN—JOINT SUIT—DISRATING—SPECIAL NOTICE.

1. The master and owners of a whaling ship, are not liable to be sued jointly by a seaman, for his lay or share.

2. A clause in the shipping articles, authorizing the master to disrate any seaman, whom he should judge indisposed, or incompetent, to his duty, which had been in use only three years, and was not brought specially to the notice of the seaman, at the time he shipped, was held not to be binding on him.

3. Whether any length of use, or special notice of such an article, would make the judgment of the master conclusive, quaere.

This was a libel in admiralty, for a cooper's lay on a whaling voyage, (one sixty-fifth of the net catchings, being more than $1300,) brought against the master and owners. An exception, that these parties could not be proceeded against jointly (see 13th admiralty rule), being sustained by the court, there was a discontinuance as to the master. Two other exceptions: 1st. That a master in a whaling voyage is not liable for the lays of the men; and 2dly. That all the owners must be joined; were argued at length in April last, but it became unnecessary to decide them. After a hearing, at a subsequent day, upon the merits,

E. T. Dana, for libellant.

J. H. Clifford and L. F. Brigham, for respondents.

SPRAGUE, District Judge. The defence was, 1st. That the libellant being judged incompetent by the master, and displaced, this was conclusive against his claim, under the following clause in the shipping articles:—"It is further agreed that if any officer or seaman, after a fair trial of his abilities or disposition, shall be judged incompetent, or indisposed, to the proper discharge of the duties of his station, the master shall have a right to displace him, and substitute another in his stead,—a corresponding reduction of the lay

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

of such officer, or seaman. with reference to the duty which he may afterwards perform, thenceforth to take effect." See Curt. Merch. Seam. p. 393.

It was alleged by the libellant, in his supplemental libel, and was uncontradicted, that he had no actual knowledge of this stipulation in the articles, and that they were neither read by, nor to, him, and that he received no additional compensation on account of it. It is the well settled rule of admiralty law, that a seaman is not bound by any new or unusual stipulation introduced into the articles, and which is in derogation of his general rights, without full knowledge thereof, and adequate compensation therefor. Brown v. Lull [Case No. 2,018]. Now, the object of this clause is, not merely to enable the master to disrate a seaman, which he might always do, but to make the master's judgment, on that point, conclusive upon the seaman and his wages, so that no court may afterwards inquire into its correctness. Such being the character of this article, and the libellant denying any knowledge of it in fact, the court is to inquire whether general usage and length of time, has so far established it, as a part of the common shipping articles, in the whaling business, that the libellant was, in legal contemplation, affected with knowledge of it. On this point, the facts as reported, under agreement, by a commissioner of this court are, that the introduction of this stipulation is peculiar to New Bedford, and its immediate vicinity; that a form of articles, with this clause, was first printed in 1839; that it began to be used in 1840, and from that time forward, has been growing into general use. This vessel sailed from New Bedford in 1843. Thus the average length of a single whaling voyage, measures the whole interval from its first introduction, to its use in the articles now in question. The duration of these voyages makes the shipping and the settling with crews, of much less frequent recurrence than in the freighting business. Upon these facts, I think it would be venturing too far, to say that this libellant must be presumed to have known of the introduction of this clause. He should have been specially informed of it, at the time he shipped.

In deciding this point, upon the special circumstances of the case, I do not mean to intimate an opinion that this clause in the shipping articles would, by any length of time, or by being brought specially to the notice of the seaman, make the judgment of the master absolutely conclusive, so that the court could not inquire into its justness, or reasonableness. I leave that question to be decided, when it shall become necessary to do so.

The judgment of the master being held not conclusive upon the libellant, I must pass upon the question of his competency. It was proved to have been perfectly well understood by all parties, that he shipped as for his first voyage, and not at the full lay of a cooper. Upon a careful examination of all the evi-

dence, I am of opinion that the libellant was not incompetent to fulfil this engagement. Decree for the libellant for the lay claimed.